ItTHIBODEAUX, Judge.
The defendant, Clebe O’Neal States, appeals his conviction for second degree kidnapping of his nephew’s girlfriend and his sentence of twenty-five years at hard labor, two of which are to be served without benefit of parole, probation, or suspension of sentence.
hThe defendant argues that the evidence was insufficient to sustain a conviction and the trial court erroneously denied a new trial based on newly discovered evidence.
We affirm.

*147
ASSIGNMENT OF ERROR NO. 1

Defendant contends the evidence, when viewed in a light most favorable to the prosecution, was insufficient for a trier of fact to find the defendant guilty of the crime charged beyond a reasonable doubt.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel Graffagnino v. King, 436 So.2d 559 (La. 1983). It is the role of the fact finder to weigh the respective credibility of the witness, and the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, 436 So.2d 559, citing, State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. La.R.S. 14:44.1 provides, in pertinent part, that second degree kidnapping is the forcible seizing and carrying of a person from one place to another, or the imprisoning or forcible secreting of any person, wherein the victim is physically injured or sexually abused.
Deidra Broussard, the victim, testified that on May 30,1992, she and her boyfriend, John States, made plans to attend a softball game. The defendant, John ^States’ uncle, picked both individuals up at Deidra’s house. Instead of going to the softball game, they decided to ride three wheelers. Another individual named Corey joined the trio, along with John’s mother and father. After John’s parents left, the four continued to ride three wheelers with another individual named Jared Fontenot. Corey left and John and Jared proceeded on the three wheelers to Jared’s camp nearby. The defendant and Deidra were to follow in the defendant’s car. The defendant drove along a levee past John and Jared and eventually left them behind. Deidra testified they soon came to a road blocked by a gate. An Indian Bayou Hunting Club sign was posted nearby. The defendant reached over, touched Deidra, and told her “I am going to get some pussy.” The defendant exited the vehicle and Deidra tried to start the car and leave. The defendant, upon seeing this, grabbed a pipe and threatened Deidra. Deidra tried to run away but the defendant tackled her. The defendant proceeded to take Deidra’s clothes off. Deidra fought with the defendant and told him that she was on her period. The defendant ordered her to remove her tampon. The defendant proceeded to fondle Deidra for a short period before letting her get dressed. The defendant then made her undress again and ordered her to perform oral sex on him. However, the defendant was unable to get an erection. Deidra testified that this aggravated the defendant so he tied her to a tree with his shoelaces and pieces of a tom shirt. The defendant continued to drink beer and attempt intercourse through the night. The defendant taunted Deidra and rubbed a baseball bat on her vagina while threatening to insert it. The next morning the defendant attempted intercourse several more times but was unable to complete the act. Eventually the defendant told Deidra to get dressed and the defendant took Deidra to his sister’s house. The sister took Deidra to John’s mother’s house. The 14police were already at John’s mother’s house as Deidra’s father had alerted them since Deidra had been missing all night.
The defendant testified the two became lost in the woods and the car would not start. The defendant stated nothing happened between him and Deidra. The defendant denied trying to rape Deidra and testified that it would not take him two days to get an erection.
Dr. Patrick Gillespie testified he examined Deidra Broussard immediately after the incident. Deidra was crying and appeared frightened and depressed. Dr. Gillespie stated he found numerous bruises and contusions to her neck, wrists, upper inner arms, lateral arms, left scapula area, lumbar area, forearms, thighs and lower legs. Dr. Gillespie also testified that Deidra appeared to have rope bums on her arms and legs. The pho *148 tographs in the record corroborate these observations.
In his brief, the defendant disputes the testimony of the victim, Deidra Brous-sard. A determination of the weight of evidence presented is a question of fact. The resolution of a matter where conflicting testimony exists requires a determination of the credibility of the witnesses and is a matter of weight of the evidence and not sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. State v. Nolan, 503 So.2d 1186 (La.App. 3 Cir.), writ denied, 507 So.2d 226 (La.1987). The testimony of the victim alone is sufficient to establish the elements of the crime.
A fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Where rational trier’s of fact could 1 ¾ disagree as to the interpretation of the evidence, the rational trier’s view of all evidence most favorable to the prosecution must be adopted on review. Only irrational decisions to convict by the trier of fact will be overturned. See State v. Mussall, 523 So.2d 1305 (La.1988).
Detective Marcus Guidry testified that when he first saw Deidra after the incident she was dirty, her clothes were filthy, and he noticed ligature marks on her wrists. Charlene Williams testified that she saw Dei-dra after the incident and Deidra stated that she had been out “partying” and did not appear upset. John Stutes testified that he saw Deidra some time after the incident and Deidra told him that “nothing had happened, her daddy made her say what happened.”
The trier of fact was presented with the testimony of both the state’s witnesses and the defendant’s witnesses and unanimously found the defendant guilty of second degree kidnapping. The record discloses no abuse of discretion and we conclude that the evidence was sufficient to support defendant’s conviction.

ASSIGNMENT OF ERROR NO. 2

Defendant contends the trial court erred in failing to grant a new trial based on newly discovered evidence.
Defendant contends at the time of jury selection the jurors were told defendant’s trial would be tried in one day. Each juror indicated that this would not affect his or her schedules. However, defendant’s trial lasted two days. Defendant claims the jurors decided to forgo a break on the second day of trial because two jurors were planning to attend graduation ceremonies in Baton Rouge, over an hour away from the courthouse. Defendant now argues the jury only took forty minutes to decide this complex case because they were rushed through deliberations by these |6two jurors. Defendant contends this “created a climate which is contrary to the deliberate pace of American juries.”
La.Code Crim.P. art. 851 provides the grounds for granting a new trial. The defendant is basing his argument on La.Code Crim.P. art. 851(5) which provides that a court may grant a new trial so the ends of justice would be served. A new trial was not warranted in this case. Defendant does not reveal in brief the names of these two jurors or how he discovered this information nor does the defendant present any evidence to support his allegation that the two jurors coerced the others into reaching an early verdict without thoroughly considering the evidence.

ERROR PATENT

La.Code Crim.P. art. 880 provides that when imposing sentence the court shall give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. The record indicates the trial court did not do so. We amend the sentence to reflect that the defendant is given credit for time served prior to the execution of the sentence. See La.Code Crim.P. art. 882(A). Resentencing is not required; however, this case is remanded and the district court is ordered to amend the commitment and minute entry of *149 the sentence to reflect that the defendant is given credit for time served. State v. Moore, 93-1632 (La.App. 3 Cir. 5/4/94), 640 So.2d 561.

CONCLUSION

The defendant’s conviction and sentence are affirmed. The district court is ordered to amend the commitment and minute entry of the sentence to reflect the defendant is given credit for time served in accordance with La.Code Crim.P. art. 880.
AFFIRMED.