DO NOT PUBLISH

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**13-284**

**STATE OF LOUISIANA**

**VERSUS**

**SHELWIN MARKISE JONES**

\*\*\*\*\*\*\*\*\*\*\*\*

**APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 310,652
HONORABLE PATRICIA EVANS KOCH, JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

**J. DAVID PAINTER
JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, J. David Painter, and James T. Genovese, Judges.

**AFFIRMED WITH INSTRUCTIONS.**

**Brent Hawkins
Attorney at Law
P.O. Box 3752
Lake Charles, LA 70547
COUNSEL FOR DEFENDANT-APPELLANT:**
  Shelwin Markise Jones

**James C. Downs, District Attorney
W.T. Armitage, Jr., Assistant District Attorney
P.O. Drawer 1472
Alexandria, LA 71309
COUNSEL FOR APPELLEE:**
  State of Louisiana

**PAINTER, Judge.**

Defendant, Shelwin Jones, appeals his conviction for attempted armed robbery. For the following reasons, we affirm.

## FACTS

At about 3:00 a.m. on May 19, 2011, Defendant approached the victim in the parking lot of the victim's apartment and asked for a lighter. The victim said he did not smoke and continued about his business. However, Defendant waited until the victim came back to the vehicle and approached him a second time, again asking for a lighter. When the victim turned back from looking in the vehicle for a lighter, Defendant struck him. Defendant produced a gun and struck the victim again. The victim testified that he had never seen the man before this time. He stated that he did not see a gun the first time he talked to Defendant. There was testimony that the victim struggled with Defendant, but that Defendant fled when a neighbor, roused by the victim's shouts, came out of the apartment building. Afterwards, the victim noticed that his keys were missing.

Defendant was charged on with armed robbery, a violation of La.R.S. 14:64. A jury convicted him of the responsive verdict of attempted armed robbery on October 10, 2012. He was sentenced to fifteen years at hard labor without the benefit of parole, probation, or suspension of sentence.

Defendant appeals alleging two assignments of error: 1) Defense counsel rendered an ineffective performance by failing to object to a suggestive identification procedure; and 2) the evidence was insufficient to show that there was specific intent to commit attempted armed robbery.

1

# DISCUSSION

*Error Patent*

Pursuant to La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent.

The record before this court does not indicate that the trial court advised Defendant of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. The trial court is directed to inform Defendant of the provisions of article 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of this opinion and to file written proof in the record that Defendant received the notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

*Sufficiency of the Evidence*

Defendant argues that attempted armed robbery requires a showing of specific intent to commit the offense of armed robbery. He asserts that he never asked the victim for anything, that the fact that the victim's keys went missing was only a coincidence, and that, at best, he is guilty of either battery or, at worst, aggravated battery.

Armed robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La.R.S. 14:64(A). The offense of "attempt," in pertinent part, is defined as:

> A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

La.R.S. 14:27.

2

Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the proscribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). The supreme court in *State v. Ordodi*, 06-207, p. 10 (La. 11/29/06) 946 So.2d 654, 660, discussed the standard by which to review questions of sufficiency of the evidence in a case where the defendant was convicted of attempted armed robbery and complained on appeal that the State failed to prove the requisite specific intent:

> In evaluating the sufficiency of the evidence to support a conviction, a reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Weary*, 2003-3067 p. 17 (La.4/24/06), 931 So.2d 297, 310, *pet. for cert. filed September 20, 2006* (No. 06-6799); *State v. Captville*, 448 So.2d 676, 678 (La.1984). The fact-finder weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations. *State v. Dabney*, 2002-934 p. 1 (La.4/9/03), 842 So.2d 326, 327; *State ex rel. Graffagnino v. King*, 436 So.2d 559, 563 (La.1983) ("It is the role of the fact-finder to weigh the respective credibilities of the witnesses, and this court will not second-guess the credibility determinations of the trier of fact beyond our sufficiency evaluations under the Jackson standard of review."). "However, we are mindful that the touchstone of *Jackson v. Virginia* is rationality and that 'irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.'" *State v. Davis,* 2002-1043 p. 2-3 (La.6/27/03), 848 So.2d 557, 558 citing *State v. Mussall*, 523 So.2d 1305, 1310 (La.1988) (emphasis in original).

In *Ordodi*, a customer of a bank noticed a man tucking a gun into the waistband of his pants as he approached the bank. The defendant entered the bank, milled around until he was asked if he needed help. He said he wanted to open an account. He spoke with bank personnel for a short time, acting fidgety, and then left the bank. The same customer then noticed the defendant's truck parked at another bank immediately thereafter. She alerted the bank manager, who called the police. Again, inside the bank, the defendant meandered around until someone

asked him if he needed something. He said he wanted to open an account. He talked briefly with a manager, then stated he was unsure if it was the time to open an account, and left hurriedly to find the police outside waiting for him. In both cases, the banks were crowded.

The supreme court noted:

> The state, therefore, had the initial burden of proving beyond a reasonable doubt that Ordodi had the specific intent to take something of value, from another person, using force or intimidation, while armed with a dangerous weapon. "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. *Weary*, 2003-3067 p. 18, 931 So.2d at 311. The determination whether specific intent exists is a fact question for the jury. *State v. Legrand*, 2002-1462 p. 8 (La.12/3/03), 864 So.2d 89, 96, *cert. denied,* 544 U.S. 947, 125 S.Ct. 1692, 161 L.Ed.2d 523 (2005); *State v. Williams*, 490 So.2d 255, 260 (La.1986), *cert. denied*, 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 780 (1987).

*Id.* at 661.

The supreme court in *Ordodi* stated that a rational jury could have found beyond a reasonable doubt that the defendant had the requisite specific intent to rob the bank. The court noted that he armed himself and concealed the weapon, entered the bank with the weapon and a plastic bag, and wore a baseball cap and dark glasses to hide his face. He removed the license plate from his truck and left the truck running when he entered the bank. While there was testimony that the defendant never showed the gun or asked for money from anyone, the supreme court reasoned that "[t]hese circumstances support the jury's determination that the defendant specifically intended to commit armed robbery." *Id.*

In the current case, as in *Ordodi*, the jury could have found beyond a reasonable doubt that Defendant had the requisite specific intent to commit armed robbery. Defendant approached the victim in the parking lot of the victim's

4

apartment at 3 a.m. and asked for a lighter. The victim said that he did not smoke and continued about his business. However, Defendant waited until the victim came back to the vehicle and approached him a second time, again. When the victim turned back from the vehicle, Defendant struck him twice and pulled a gun. The victim testified that he had never seen the man before and that he did not see a gun the first time he talked to Defendant. There was testimony that the victim struggled with Defendant, but Defendant fled when a neighbor came out of the building. In brief, Defendant argues:

> The State suggests the thing of value subject to be taken was Watkins['] keys, which were never recovered after the altercation. It is not challenged Watkins did not find his keys after the assault; however, this is merely circumstantial evidence that the assailant took the keys. To transform this fact into the *specific intent* necessary to find Shelwin guilty of attempted armed robbery is too far of a stretch, there are too many other things that could have happened to the keys. For example, during the struggle the keys could have been catapulted to an area that was never searched, [sic] this is a very reasonable hypothesis. See La.R.S. 15:438.

However, this is not a case in which the reasonable hypothesis that the keys were simply lost during the struggle negates the crime of attempted armed robbery. It does not matter whether Defendant wanted to take the keys, the car, or the victim's wallet. As in *Ordodi*, where the defendant did not ask for money, it did not matter whether Ordodi intended to take money from the tellers or their jewelry, his actions showed that he intended to commit the act of armed robbery. In the current case, the jury determined, beyond a reasonable doubt, that Defendant's actions indicated that he had the specific intent to rob the victim while armed with a dangerous weapon.

Accordingly, we find that the evidence was sufficient to support a conviction for attempted armed robbery.

5

*Ineffective Assistance of Counsel*

Defendant further asserts that he received ineffective assistance from Defense Counsel in that counsel failed to object to a suggestive identification procedure.

Officer William Carmouche, an officer with the Alexandria City Police Department, testified that he was dispatched to the scene of the assault. He stated that in the area where the victim and the assailant had their altercation, there was a cell phone lying on the ground. He said that the victim told him that during the struggle with his assailant, he saw what he believed to be a cell phone light up in the assailant's pocket. The victim saw the cell phone on the ground after the assailant ran away and pointed it out to the officer when he arrived. After determining that the cell phone did not belong to anyone at the scene and because the victim said that he thought the phone belonged to the assailant, the officer picked a number from the phone at random and called. The person who answered told the officer that the phone belonged to Sherwood Jones. Officer Carmouche testified that with the name of the suspect, he was able to pull up a picture of Sherwood Jones on the computer in his police vehicle. The victim identified the picture as the man who attacked him.

David Foshee, a corporal with Alexandria City Police Department, testified that when he received the case that morning, he looked up the suspect Sherwood Jones and discovered that Sherwood Jones was in prison at that time. He got a search warrant for the cell phone and began calling numbers. He eventually learned that Sherwood Jones had an identical twin named Shelwin. He prepared a photographic lineup with Shelwin's picture and pictures of five other similar looking men and showed it to the victim, who, this time, picked out Defendant as the man who assaulted him with a gun.

6

Defendant suggests that "because Sherwood Jones was not included in the lineup, the lineup was improperly suggestive. He argues that this is particularly so because the person originally identified by the victim, was Sherwood Jones, not Shelwin Jones. Defendant further argues that it is not important that Sherwood could not have committed the assault because he was in custody, the purpose of the lineup was to compile a non-suggestive array of six persons with common characteristics to be used as an investigative tool, not to stack the deck. This court finds nothing suggestive in this identification procedure. The two brothers were virtually identical. At trial, the victim testified that subsequent to the robbery attempt, he was shown pictures of the two brothers and would have been unable to distinguish one from the other

However, Defendant also argues that the initial identification of the suspect was unduly suggestive because the victim was shown only one picture instead of a photographic lineup of six men. In *State v. Johnson,* 95-711, p. 4 (La.App. 3 Cir. 3/29/96), 664 So.2d 766, 769, *writ denied*, 96-82 (La. 3/29/96), 670 So.2d 1236, this court addressed the issue of whether a single-photo identification was suggestive, noting that "[s]ingle-photo lineups have been repeatedly held to be an improper and suggestive identification procedure. *State v. Rosette*, 94-1075 (La.App. 3 Cir. 3/22/95), 653 So.2d 80; *State v. Hensley*, 608 So.2d 664 (La.App. 3 Cir.1992), *writ denied*, 613 So.2d 972 (La.1993)."

As pointed out by Defendant, defense counsel did not file a motion to suppress the identification or object to the identification procedure at trial. Generally, absent a denial of a motion to suppress or a contemptuous objection at trial, the issue is not preserved for appeal; therefore, Defendant would be precluded from asserting this as error. La.Code Crim.P. art. 841(A); *Johnson,* 664 So.2d 766. However, Defendant argues that defense counsel rendered ineffective performance

7

for failure to file a motion to suppress or to object to the admission of the identification at trial. While normally questions of ineffective assistance of counsel are addressed in post-conviction relief, the record in this case is sufficient to discuss whether the identification procedure was suggestive.

This court further stated in *Johnson* that "[i]nitially we note that our inquiry does not end with a determination that there was an improper and suggestive identification procedure. For the identification to be inadmissible due to an allegedly suggestive identification procedure there must be a substantial likelihood of misidentification in addition to the suggestive identification procedure." *Id.*

In *State v. Thomas*, 04-1341, pp. 6-7 (La.App. 5 Cir. 5/31/05), 904 So.2d 896, 901-02, *writ denied*, 05-2002 (La. 2/17/06), 924 So.2d 1013, the fifth circuit stated:

> A defendant challenging an identification procedure must prove that the identification was suggestive and that there was a substantial likelihood of misidentification. *State v. Thibodeaux*, 98-1673 (La. 9/8/99), 750 So.2d 916, 932, *cert. denied*, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000). An identification procedure is suggestive if, during the procedure, the witness' attention is unduly focused on the defendant. *State v. Thibodeaux, supra.*
>
> Although one-on-one identifications are not favored, these identifications are permissible when justified by the overall circumstances. *State v. Smith*, 02-1018 (La.App. 5 Cir. 3/11/03), 844 So.2d 119, 123. This is particularly true when the one-on-one identification is closely associated in time with the commission of the crime and where the suspect is returned to the location of the crime for immediate identification. *State v. Robinson*, 404 So.2d 907, 909 (La.1981). Such identifications promote fairness by assuring reliability and the prompt release of innocent suspects. *State v. Robinson, supra.*
>
> Fairness is the standard of review for identification procedures and reliability is the linchpin in determining the admissibility of identification testimony. *Manson v. Brathwaite*, 432 U.S. 98, 113-114, 97 S.Ct. 2243, 2252-53, 53 L.Ed.2d 140 (1977). The factors to be considered in assessing reliability include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the confrontation;

and (5) the time between the crime and the confrontation. *Manson,* 432 U.S. at 114, 97 S.Ct. at 2253. Any corrupting effect of a suggestive identification procedure is to be weighed against these factors. *Id.*

Considering the factors of reliability cited in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243 (1977), we note that: While it was three o'clock in the morning, the testimony established that the area where victim parked his car was well lit. The victim testified that Defendant approached him twice and asked for a lighter. He stated that he got a "slight look but I remember his face." Defendant hit him twice, once with his fist in the face and once alongside the head with a gun. The victim testified that his struggle with Defendant took them across the parking lot into a grassy area. There was no testimony as to how long the altercation took place, but the victim was apparently observant enough to see what appeared to be a cell phone light up in Defendant's pocket and then see a cell phone on the ground right after the assault. According to Officer Carmouche's testimony, the victim identified the picture of Defendant's identical twin that he was shown on the police unit's computer immediately. At trial, the victim stated he was positive at the time and at trial that Defendant was the man who assaulted him.

While the victim saw a picture of Defendant's twin brother initially, he testified that he did not know either man prior to trial, and the brothers were identical twins, with one brother being in prison at the time of the offense. There was a very low likelihood of misidentification in this case.

Having found that the identification procedures were not suggestive, we further find that Defense Counsel was not ineffective in failing to object in that regard.

## CONCLUSION

9

Defendant's conviction for attempted armed robbery is affirmed. Furthermore, we direct the trial court to inform the Defendant of the provisions of article 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof in the record that the Defendant received the notice.

**AFFIRMED WITH INSTRUCTIONS.**